FANNY LEVIN et al., Respondents-Appellants, *v.* STATE OF NEW YORK, Appellant-Respondent. (Claim No. 34293.)

Third Department, December 7, 1962.

*Louis J. Lefkowitz, Attorney-General (Julius L. Sackman* of counsel), for appellant-respondent.

*Guggenheimer & Untermyer (Monroe Goldwater, Harry Hoffman* and *Leon H. Tykulsker* of counsel), for respondents-appellants.

Coon, J. The Court of Claims has awarded $557,365 to claimants as compensation for land taken and for consequential damage to land not taken. The claimants contend they are entitled to $1,056,695. The State asserts claimants are entitled to approximately $257,615. This great differential is not only due to the difference of value opinion between expert appraisers, but is largely dependent upon the consideration of the effect of a profitable lease which was existent at the time of the taking. In general, the State claims that it should pay for only unimproved land on an acreage basis, while claimants contend that they are entitled to compensation for the loss of a highly profitable executed lease of most of the land which was taken.

Claimants, through their corporate agent, Rebrug Corp., had been trying for about a year to find a suitable and adequate site for the operations needed by Reeves Instrument Corp., an electronics manufacturer. The requirements were difficult to find in the area, including: (1) proximity to a labor source; (2) elevation to "sight" instruments on distant objects; (3) adequate parking for employees who would be largely dependent upon private car transportation. Finally claimants' agent, Rebrug Corp., found a desirable site and, after many consultations with Reeves, purchased three contiguous parcels of land totaling 49 acres, locally zoned as residential. The cost of the unimproved land on all three parcels, zoned as residential, was $3,500 per acre. On October 6, 1954, claimants' agent, Rebrug Corp., contracted to buy the 49 acres at that price. On October 26, 28.2 acres were rezoned to light industrial use, which opened the door for the Reeves plant. On December 1, 1954, Rebrug took title, and on December 4 Rebrug conveyed the title to claimants, and on the same day the lease from claimants to Reeves was executed. This lease provided for the construction of buildings, with specifications attached, and for the payment of rental for the improved land of $380,900 per year for 23 years. On December 31, 1954, the State appropriated 34.1 acres, 21.1 of which was from the parcel rezoned industrial, and thereby rendered the performance of the lease impossible.

Aside from fringe differences as to the consequential damage to the remaining industrially zoned property and two zoned classes of residential property, the fundamental difference

between the parties is whether any consideration should be given to the value of the existing lease. Claimants contend that the loss of clearly expected future earnings constitute a damage, while the State contends that inasmuch as the buildings had not been actually constructed, it need pay only the value of the unimproved " raw " land.

At this point it should be noted that the good faith of claimants is conceded. But, beyond the concession, it appears in the record that prior to acquiring title and the execution of the lease to Reeves, claimants and their agent had reason to believe (upon proposed maps and information from State engineers) that only an inconsequential (if any) part of the subject property would be taken. The State thereafter changed the plans and appropriated the major part of the property which had the highest potential value.

It is also conceded that Reeves was a " prime " tenant, meaning that its financial responsibility to perform its obligations under the lease was unquestioned.

An expert witness for claimants has capitalized the agreed rental less the estimated cost of the improvements, and has considered that factor, among other things, in arriving at claimants' damage. The Court of Claims has found, with evidence to support the finding, that the cost of the improvements could be ascertained with reasonable certainty. This evaluation of reasonably expected earnings has been approved in *Mattydale Shopping Center* v. *State of New York* (303 N. Y. 974, revg. 279 App. Div. 704) and explained in *St. Agnes Cemetery* v. *State of New York* (3 N Y 2d 37, 45). The State's expert refused to consider the executed lease at all in evaluating claimants' damage except for limitation purposes, mentioned later herein. The Court of Claims was not bound to accept his rejection of any value to the lease. The fact that claimants stood to make a handsome profit from their favorable acquisition of the subject property and subsequent favorable lease to Reeves should not deprive claimants of the rewards of a successful business enterprise, which was lost because of the appropriation.

Claimants not only had the executed lease with a prime tenant, they had obtained a favorable rezoning, spent substantial sums for plans and engineering work, obligated themselves to completion of agreed improvements by a certain date under penalty, and had actually progressed substantially in clearing and grading the land. To say that claimants' successful business venture, of which they were deprived, is worth nothing more than the present value of the barren land originally acquired, is ignoring the realities of commercial transactions.

The single factor of the lease which the State's expert did consider was a provision giving Reeves the option to purchase the land at $7,500 per acre, plus the cost to date of the improvements, if the improvements were not completed by an agreed date. This agreement between the parties, dependent upon a contingency not likely to happen, should not benefit the State. Its purpose was collateral to true evaluation and it was designed to encourage prompt construction of the improvements. It was in no sense a valuation of the property in a free market with a willing buyer and a willing seller.

There is evidence in the record of comparable sales which demonstrate the fantastic value of land space in the area of the subject property. The State claims that they are not comparable because a few miles distant and closer to New York City. These sales are of evidentiary value and the trial court undoubtedly weighed their nature and location in relation to the subject property.

We think the trial court properly considered the reasonably expected income fixed by firm contract and not dependent upon speculative profits from a nonexistent business, as in *Levitin* v. *State of New York* (12 A D 2d 6). The buildings are nonexistent here, but the cost of them in accordance with agreed specifications and plans presents a factual question for the trial court. The Court of Claims has obviously not accepted either the evidence of claimants or that of the State at face value, but has fixed a market value and consequential damage which is well within the range of the testimony. Upon all of the evidence relevant to market value of the property at the time of taking, the Judge of the Court of Claims who heard the witnesses and viewed the property, has fixed a value upon the land taken and the consequential damage to the remainder. Upon this record we see no compelling reason to either lower or raise that evaluation.

The judgment should be affirmed, without costs.

BERGAN, P. J. (dissenting). On October 6, 1954 claimants through their agent contracted to buy 49 acres of unimproved land for a little over $171,000 at $3,500 an acre, title passing to claimants on December 1, 1954. Within a month the State appropriated 34.1 acres of this unimproved land.

An award of $557,365 has been made. This amount, which is over 300% more for 34.1 acres than claimants paid within a few weeks for 49 acres is in our judgment grossly excessive. The award reaches these huge proportions because claimants intended to erect improvements on the land; had obtained a zoning change;

and had entered into contractual arrangements with a third party for the ultimate rental of the projected improvements.

But there were no improvements on this land when the State appropriated it. To treat a plan to put up a building as a building that has been put up; and then to capitalize the rent reserved in the lease as though the building had been put up and occupied and the lease had successfully run its full course to the end, seems an unrealistic approach to a proper award in condemnation.

Indeed, it charges to the public authority condemning land an obligation to carry out a projected commercial enterprise on the land to a successful termination with no risk, no effort, and no investment by the claimants. A party is entitled to " just compensation " but this is for the land taken and its improvements. Just compensation requires a consideration of the value of land as it may be affected by potential growth under favorable circumstances; but it ought not to include as completed improvements the mere intention and purpose of the owners to improve the land.

An improvement is a physical entity and not a contract; and in these circumstances a " lease " to use land in the future after it has been actually improved does not spell out an " improvement ". All this is still merely the intention of private parties to do something with land in the future which they had not done in the present.

No case in New York has gone as far as this. The decision in *Mattydale Shopping Center* v. *State of New York* (303 N. Y. 974, revg. 279 App. Div. 704) was essentially a fact evaluation by the Court of Appeals in one of the rare situations when on successive reversals a question of fact comes to that court. The court held, merely, that the Appellate Division decision was not in accordance with the weight of evidence. It cannot be read to sanction as a matter of law the right of owners of unimproved land in all cases to recover as " improvements " in the full value of what they expect to put on the land in the future.

Moreover, the theory by which the capitalization of this projected improvement was treated by the Court of Claims as though it had been actually carried out and the use of this as a measure of damage was disapproved in the opinion in *St. Agnes Cemetery* v. *State of New York* (3 N Y 2d 37, 45).

The judgment should be modified to allow claimants $257,615.

GIBSON and HERLIHY, JJ., concur with COON, J.; BERGAN, P. J., dissents and votes to modify the judgment in an opinion in which REYNOLDS, J., concurs.

Judgment affirmed, without costs.